# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

In the Matter of:        }

                                        }

BILL HEARD ENTERPRISES, INC., et al.,  }    CASE NO. 08-83029-JAC-11

                                        }

                                        }    CHAPTER 11

                         Debtor(s).    }

## MEMORANDUM OPINION

This case is before the Court on motion filed by GMAC, LLC ("GMAC") to compel General Motors Corporation ("GM") to turnover funds being held in GM's open accounts for each of Bill Heard's dealerships for which GMAC provided floor plan financing. (DK # 485) On December 4, 2008, GMAC filed a motion for entry of summary judgment in its favor and against GM seeking an order: (1) confirming GMAC's priority security interest to the GM open account balances as superior to any interest, right of offset or recoupment or claim by GM; (2) barring GM from recouping or offsetting damages against the credit balances in the open accounts; (3) compelling GM to turnover to GMAC the account balances due each of the GMAC floorplan debtors; and (4) requiring GM to provide an accounting of all funds being held in the open accounts. (DK# 938)

At a hearing held on February 10, 2009, the Court instructed GM and GMAC to immediately submit an order requiring any funds being held in these accounts, whether prepetition or postpetition funds, to be placed in a separate escrow account subject to this Court's jurisdiction, either the GMAC escrow accounts or a separate account as agreed to by the parties, pending the outcome of this litigation.

By consent of the parties, the issues before the Court have been bifurcated first into a liability phase to determine the threshold legal issue of whether GM is entitled to recoup or setoff

the damages it asserts against the GMAC floorplan debtors against the funds GM has been holding in the open accounts. In the second phase of this litigation, the Court will determine the amount of GM's damages which may be recouped or setoff against the accounts and any issues related to the funds. The Court, having determined as set forth below that GM is entitled to recoupment and setoff, instructs the parties to proceed with the damages phase of this litigation by filing a separate adversary proceeding to determine the amount of GM's damages and any other related issues. The Court will reserve ruling until that time whether some of the funds in the open accounts represent postpetition proceeds of GMAC's secured collateral.

**FINDINGS OF FACT**

1. On September 28, 2008, the debtors in the above styled jointly administered case filed for relief under Chapter 11 of the Bankruptcy Code. Prepetition, the debtors owned and operated fourteen Chevrolet dealerships in seven states. Postpetition, the debtors are managing their properties in a liquidation mode while they attempt to sell the dealership properties.

2. GMAC provided ten of the dealerships (the "GMAC floorplan debtors") with financing to purchase vehicles. To secure the obligations due GMAC, the GMAC floorplan debtors granted GMAC a security interest in all motor vehicle inventory, parts inventory and accounts. GMAC also asserts a first priority security interest in all of the assets of Bill Heard's Sugar Land Store.

3. The GMAC floorplan debtors are each a party to a Dealer Sales and Service Agreement with GM (the "dealer franchise agreements") pursuant to which the debtors purchased vehicles,

parts and other items from GM and were granted a franchise to operate a Chevrolet dealership.

4. Prior to the petition date, GM maintained an "open account" for each of the GMAC floorplan debtors. GM used these open accounts to "track the amounts 'due to' or 'due from' each individual Bill Heard dealership for various items including, but not necessarily limited to, parts, tools, sales advertising purchases, incentive payments and payments for warranty work, among other things."[1] GM maintained the open accounts using a system of debits for items such as parts purchased by the dealerships from GM pursuant to the dealership franchise agreements and credits for amounts GM owed the dealerships for advertising allowances, incentive payments and warranty work as provided for by the dealership franchise agreements. Periodically one party would pay the net balance due the other party, or it appears that quiet often the dealerships would simply allow the credits to remain in the account to be used for further charges.

5. As of the petition date, the GM open accounts held credit balances due the various GMAC floorplan debtors. GMAC asserts that it has a perfected security interest in these accounts and, therefore, any amounts due the GMAC floorplan debtors under any of the open accounts represent collateral pledged to GMAC. GM does not dispute that GMAC has a security interest in and a lien on the open accounts for each of the GMAC floorplan debtors.

6. On September 24, 2008, four days prior to the petition date, the debtors' fourteen dealerships closed their doors and ceased regular business operations. Section 14.5.3 of the dealer franchise agreements provides that GM may terminate the franchise agreements by giving

---

[1] GM's Response to GMAC's Motion for Entry of Summary Judgment, Dk # 938, p. 2.

a dealer written notice of termination if the dealer fails "to conduct customary sales and service operations during customary business hours for seven consecutive business days." Section 14.5 provides that termination is effective on the date specified in the written notice provided by GM. It appears that all of the dealership franchise agreements were terminated effective postpetition.

7. On September 26, 2008, two days before the petition date, GM provided the GMAC floorplan debtors written notice that they were in breach of the agreements. The notice provided that the dealer agreements between GM and Bill Heard would terminate effective October 3, 2008, if the debtor did not resume customary sales and service operations by that date. Although the debtors filed bankruptcy before October 3, 2008, each of the dealer franchise agreements has now been terminated either by virtue of the sale of the dealership assets under 11 U.S.C. § 363 in which case the agreements were terminated by consent, or if the assets were not sold to another dealer, GM terminated the agreements for cause as ratified by the Court.

8. Postpetition, GM has continued to maintain the open accounts and has placed additional funds or credits into the accounts. Under § 15.2.1 of the dealer franchise agreements, GM is obligated to repurchase certain automobiles, signs, parts, and tools from the dealerships upon termination of the franchise agreements. Postpetition, as required by the dealership franchise agreements, GM has repurchased certain vehicles and parts from the debtors at the unsold dealership locations. With respect to the parts or collateral repurchased by GM postpetition, GMAC argues that it has a security interest in the proceeds of the collateral which have been placed by GM into the open accounts. Thus, it appears that GMAC is not

4

only claiming a security interest in the accounts themselves, but further in certain proceeds in those accounts that are traceable to the sale of the parts and vehicles upon which it has a security interest. GMAC asserts that if this Court determines that GM is entitled to recoup or setoff its damages against the open accounts, any right of recoupment or setoff must be limited to the funds in the open accounts that do not represent funds for the repurchase of parts which would represent proceeds of collateral upon which GMAC also has a lien. As stated above, the Court will reserve this issue for determination in another phase of this litigation.

9. Section 17.10 of the dealer franchise agreements includes a netting provision that allows GM to debit any amounts owed by the dealerships to GM against any amounts owed from GM to the dealerships:

> All monies due Dealer are net of Dealer's indebtedness to General Motors and its subsidiaries. In addition, General Motors may deduct any amounts due or to become due from Dealer to General Motors or its subsidiaries, or any amounts held by General Motors, from any sums or accounts due or to become due from General Motors, or its subsidiaries.

10. Pursuant to § 17.12 of the dealer franchise agreements, Michigan law governs the agreements.

11. Section 17.11 of each dealer franchise agreement provides that the agreement is the sole agreement of the parties, GM and the GMAC floorplan debtors, and no other agreements or understandings affect or relate to the subject matters covered in the dealer agreements.

5

## CONCLUSIONS OF LAW

GM argues that GMAC's motion to compel turnover is premature at this time because GM is not yet capable of determining the amount of damages it has incurred in connection with the debtors' breaches of the dealer franchise agreements. GM asserts that its potential damages include those which GM may suffer as a result of its repurchase obligations under the dealer franchise agreements with respect to dealerships where no sale occurs, the lost opportunity for sales of GM vehicles and loss of customer goodwill and other damages due to the debtors ceasing sales. GM will not know the extent of its damages until it is known what will happen to each of the debtors' dealerships. If a particular dealership is sold and the purchaser elects to purchase some or all of the dealerships' vehicles and inventory, GM's damages will be mitigated, but these amounts will be unknown until a decision is made with respect to each of the dealerships. GM argues that: (1) it is entitled to deduct its damages from the open accounts under the terms of the dealer franchise agreements; (2) it is entitled to recoup its damages from the open accounts; and (3) it has a right to setoff against the open accounts any damages it incurs as a result of debtors' breaches of the dealer franchise agreements. GM seeks pursuant to 11 U.S.C. § 542(b) to put a temporary hold on the open accounts pending a determination of its damages to protect its setoff and recoupment rights against same.

GMAC argues that it has a perfected security interest in the open accounts that gives it priority over any recoupment claims or setoff rights GM may assert to the accounts, thereby entitling GMAC to turnover of the funds being held in the open accounts. GMAC asserts that among other things, the GMAC floorplan debtors granted GMAC a security interest and lien against all present

and future accounts and, therefore, any amounts due to the GMAC floorplan debtors under any of GM's open accounts represent collateral pledged to GMAC.

As a threshold issue, the Court finds that GM has a right to assert or claim damages against the debtors resulting from the debtors' breaches of the dealership franchise agreements. GMAC argues that nothing in the dealer franchise agreements provides GM with a right to seek or claim damages upon termination of the agreements. GM counters that the agreements do not contain any waiver of rights or remedies on the part of GM or limit GM's damages in the event of a breach of the dealership agreements.[2] The Court agrees and finds that GM clearly has a common law right to assert a claim against the dealerships for any damages GM incurs as a result of the dealerships' breaches of the franchise agreements.

Pursuant to § 17.12 of the dealer franchise agreements, Michigan law governs the agreements. Under Michigan common law, a breaching party is liable for the natural and probable consequences of the breach of that contract. Michigan courts have explained that in the commercial contract situation application of this rule "generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it."[3] Under Michigan law, GM has not waived its right to assert damages for the dealers' alleged breaches of the franchise agreements and is, therefore, entitled to assert damages for the monetary value of the contracts had debtors fully performed under same.

---

[2] *See Quality Products and Concepts Co. v. Nagel Precision, Inc.,* 666 N.W.2d 251 (Mich. 2003)(finding that a waiver of contract rights must be established by clear and convincing evidence that the parties "mutually agreed to a modification or waiver of the contract").

[3] *Kewin v. Massachusetts Mut. Life Ins. Co.* 295 N.W. 2d 50, 52-3 (Mich. 1980).

7

## I. RECOUPMENT

GM is entitled to recoup the amount of its damages, once determined, against the funds being held in the open accounts. While the Bankruptcy Code does not mention or define the term "recoupment," the Supreme Court has explained that it is well settled that a "bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent the defendant merely seeks recoupment."[4] The Eleventh Circuit has observed that recoupment is:

> "'[t]he right of a defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law imposes on him in the making or performance of that contract.'"[5]

The doctrines' "function is to reduce the amount demanded, but only to the extent of the plaintiff's claim."[6]

In the bankruptcy context, the doctrines of recoupment and setoff are often "invoked as exceptions to the general rule that all unsecured creditors of a bankruptcy stand on equal footing for satisfaction."[7] If a right of recoupment or setoff exists under applicable state law, a creditor will be allowed a preference over other creditors. While the two doctrines share this attribute, they differ in other respects and their differences are important because 11 U.S.C. 553 places certain limitations

---

[4] *Reiter v. Cooper,* 507 U.S. 258, 265 n.2 (1993).

[5] *Smith v. American Fin. Systems, Inc. (In re Smith)*, 737 F.2d 1549, 1553 n. 7 (11th Cir. 1984)(quoting Ballentine's Law Dictionary 1070 (3ed. 1969)).

[6] *In re Straightline Invests., Inc.*, 525 F.3d 870, 882 (9th Cir. 2008).

[7] *In re B & L Oil Co.*, 782 F.2d 155, 156 (10th Cir. 1986).

8

on a creditor's right to assert setoff, but there is no comparable provision in the Bankruptcy Code that limits a creditor's state law right to seek recoupment.

The party alleging entitlement to recoupment has the burden of proof by a preponderance of the evidence.[8] According to the Eleventh Circuit, the party alleging recoupment must establish the following elements:

(1) that the debtor's claim and the creditor's claim arose from the same transaction;

(2) that the creditor is asserting its claim as a defense; and

(3) that the "main action" is timely.

The Court finds that GM has satisfied the second and third elements. It cannot be argued that GM is seeking affirmative relief against the debtors nor that the main action is untimely. GMAC filed the motion for turnover against GM to compel GM to turnover the balance of the funds remaining in the GM open accounts and GM has raised the issue of recoupment in defense to GMAC's timely filed motion. The only element in dispute is whether the debtors' claims to the funds in the open accounts and GM's claim arise from the same transaction.

GMAC argues that GM does not have a common law right to recoupment because GM's damages, if any, and the credit balances did not arise from one integrated transaction. GMAC asserts that the doctrine of recoupment must be narrowly construed in the bankruptcy context and cites the case of *In re Delta Air Lines,* 359 B.R. 454 (Bankr. S.D.N.Y. 2006) for this proposition. In *Delta Air Lines,* the bankruptcy court found that the government could not deduct amounts that it had overpaid for unused air-line tickets purchased prepetition by government employees against amounts the government admittedly owed the debtor for services purchased postpetition. In

---

[8] *In re Peterson,* 2009 WL 248021 *9 (Bankr. D. Ariz. 2009).

9

determining whether the obligations at issue met the "same transaction" requirement, the court followed the strict "single integrated transaction test" under which recoupment is applied only in situations in which it would be considered "inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations."[9] The court concluded that theory did not fit the facts of the case. When a government employee purchased a ticket, the purchase constituted a complete transaction for which Delta was paid. The money paid on account of each transaction immediately became the debtor's property and there was nothing inequitable about Delta retaining that property.

GM asserts that the reasoning supporting the holding in *Delta Airlines* and other cases cited by GMAC are inapplicable following the Supreme Court's ruling in *Travelers Casualty & Surety Co. of Am. v. Pacific Gas and Electric Co.*, 127 S.Ct. 1119 (2007) in which the Court explained that if the Bankruptcy Code does not expressly modify a party's nonbankruptcy rights, such rights are preserved and must be enforced. The Supreme Court observed that it must "generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed" by Congress.[10] GM asserts that the Supreme Court's reasoning is applicable to a party's right of recoupment as Congress has neither disallowed or modified state law rights of recoupment in the Bankruptcy Code, in contrast to its treatment of state law rights of setoff. It must be presumed, GM asserts and the Court agrees, that Congress' actions in limiting the restrictions of § 553 only to setoff were intentional. Accordingly, GM asserts and the Court finds that pursuant

---

[9] *In re Delta Air Lines,* 359 B.R. 454, 467 (Bankr. S.D.N.Y. 2006).

[10] *Travelers Casualty & Surety Co. of Am. v. Pacific Gas and Electric Co.*, 127 S.Ct. 1119, 1206 (2007).

to § 17.12 of the dealer franchise agreements Michigan law controls the issue in this case whether GM is entitled to recoupment.[11]

In *Mayco Plastics, Inc. v. TRW Vehicle Safety Systems, Inc. (In re Mayco Plastics, Inc.)*, 389 B.R. 7 (Bankr. E.D. Mich. 2008)(citing *Mudge v. Macomb County*, 580 N.W. 2d 845, 855 (1998), the bankruptcy court explained that Michigan common law allows one party to deduct monies owed to it by another party under the doctrine of recoupment as long as the two obligations arise out of the same contract or transaction.[12] To invoke the common law doctrine of recoupment under Michigan law, "[i]t is sufficient that the counter-claims arise out of the same subject-matter, and that they are susceptible of adjustment in one action."[13]

GM contends that its claim for damages and the funds in the open accounts arise from the same transaction and the same contracts, the dealer franchise agreements. GM cites the case of *General Motors Corp. v. Perry Gas Companies, Inc.*, 279 B.R. 824 (S.D. Tex. 2002) in which the district court found that GM was entitled to recoupment. In that case GM contracted to purchase natural gas from the debtor before the debtor filed bankruptcy. Postpetition, the debtor informed GM that it could no longer supply gas and demanded payment for the gas it had already supplied GM. GM sought to recoup from the amount owed the debtor the cost it incurred to cover the gas the debtor was not able to deliver postpetition and for plant downtime while it found another

---

[11] *See Natale v. The Home Depot U.S.A. (In re Krause, Inc.)*, 2005 Bankr. LEXIS 1404 (Bankr. D. Ga. 2005)(recognizing that courts apply nonbankruptcy law to determine whether a right of recoupment exists).

[12] *See also Thompson Boat Co.,* 230 B.R. 815, 824 n 11 (Bankr. E.D. Mich.1995)(citing *Flynn v. Barry*, 191 N.W. 215 (1922)).

[13] *Thompson Boat Co.,* 230 B.R. 815, 824 n 11 (Bankr. E.D. Mich.1995)(quoting *Ward v. Township of Alpine,* 171 N.W. 446 (1919)).

11

supplier. In reversing the bankruptcy court, the district court explained that the debtor's claim on the account for gas supplied and GM's claim for damages arose out of the identical contract. Although the claims arose at different times, both arose out of a single contract. The court observed that "[m]ultiple events-like periodic gas deliveries and consequential damages-may rise out of a single transaction . . . ."[14]

Prior to the petition date in this case, the debtors purchased parts and vehicles from GM pursuant to the terms of the dealer franchise agreements. The prepetition funds being held in the open accounts represent credits the dealerships were entitled to under the terms of the dealer franchise agreements. In September of 2008, the debtors ceased operating and filed bankruptcy. At that time, the GM open accounts held credit balances due the various GMAC floorplan debtors according to the terms of the dealer franchise agreements. GM has a claim against the dealerships for breach of the dealership agreements and asserts its right to recoup those damages against the amounts owed the individual dealerships pursuant to the terms of the same contract, the dealership franchise agreements. Clearly, GM's damages claims and the amounts being held in the open accounts arise from the same transaction or contract, the dealership franchise agreements. It would be inequitable to allow the debtors, or GMAC, to obtain the funds owed under the dealership franchise agreements without first allowing GM to recoup its damages arising from the dealerships' breaches of the same agreements. Because GMAC's rights are subject to GM's recoupment right, GMAC's motion for summary judgment must be denied.

---

[14] *General Motors Corp. v. Perry Gas Companies, Inc.*, 279 B.R. 824, 825 (S.D. Tex. 2002).

## II. SETOFF

While the doctrine of recoupment generally arises in the context of a single contract or transaction, the right of setoff "is an established creditor's right to cancel out mutual debts against one another in full or in part."[15] Setoff avoids "the absurdity of making A pay B when B owes A."[16] A party seeking to establish a right of setoff must prove that the debt owed to the debtor and the debt owing from the debtor both arose before the commencement of the case and that the claims and debts are mutual between the parties. A creditor cannot set off a prepetition claim against a postpetition liability owed to the debtor.[17]

Although § 553 of the Bankruptcy Code governs the right of setoff in bankruptcy, the Bankruptcy Code does not actually create any setoff rights; it merely preserves a creditor's setoff rights that exist under applicable nonbankruptcy law.[18] The Eleventh Circuit has explained that "'substantive law, usually state law, determines the validity of the right [of setoff].'"[19] Section 553 merely "'preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law,' and 'imposes additional restrictions on a creditor seeking setoff'" that must be satisfied to effectuate a setoff against a debtor in bankruptcy.[20]

---

[15] *B.F. Goodrich Employees Fed. Credit Union v. Patterson (In re Patterson)*, 967 F.2d 505, 509 (11th Cir. 1992).

[16] *Id.*

[17] *In re Delta Air Lines*, 359 B.R. 454, 466 (Bankr. S.D.N.Y. 2006).

[18] *Id.*

[19] *Dzikowski v. Northern Trust Bank of Florida (In re Prudential of Fla. Leasing, Inc.)*, 478 F.3d 1291)(quoting *In re Patterson,* 967F.2d 505, 508-09 (11th Cir. 1992).

[20] *In re Semcrude, L.P.*, 2009 WL 68873 *3 (Bankr. D. Del. 2009).

13

Under 11 U.S.C. § 553(a), the party asserting a right of setoff must show that: (1) the creditor held a claim against the debtor that arose before the commencement of the case, and the creditor owes a debt to the debtor that arose before the commencement of the case (timing); and (2) the claim and debt must be mutual and valid (mutuality). [21] As the party asserting setoff, GM has the burden of proof by a preponderance of the evidence.[22]

With respect to the issue of timing, GM's claim against the debtors and the debtors' claims against GM to the funds in the open accounts must both have arisen "before the commencement of the case. . . ."[23] In this case, GMAC argues that while any credit balances remaining in the GM open accounts were accumulated from prepetition transactions between GM and the GMAC floorplan debtors, whatever damages GM may allege from debtors' breaches of the franchise agreements resulted from postpetition actions when the dealer franchise agreements were effectively terminated either by a § 363 sale of a dealership or by Court approval in those situations in which the debtors have determined that they will not be able to sell certain dealerships.

GM asserts that the term "claim" is defined broadly under the Bankruptcy Code to include "any right to payment; whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."[24] Under the *Piper* test adopted by the Eleventh Circuit for determining when a party's claim arises for bankruptcy purposes, a claim arises once the plaintiff arguably had a remote claim

---

[21] *See* 11 U.S.C. 553(a); *In re EBW Laser, Inc.*, 2009 WL 116995 *2 (Bankr. M.D. N.C. 2009); *In re Gregg*, 371 B.R. 817, 819 (B ankr. E.D. Tenn. 2007).

[22] *In re EBW Laser, Inc.*, 2009 WL 116995 *2 (Bankr. M.D. N.C. 2009).

[23] 11 U.S.C. § 553(a).

[24] 11 U.S.C. § 101(5)(A).

against the debtor.[25] Under this test, there must be a preconfirmation relationship between the debtor and creditor and prepetition conduct by the debtor giving rise to the claim.[26]

Although the dealer franchise agreements were not terminated prepetition, GM's claim is based on the debtors' prepetition breaches of the franchise agreements. GM entered into the franchise agreements with the debtors before the commencement of the case and the debtors breached the terms of the agreements before the commencement of the case when the debtors closed their doors and ceased operations on September 24, 2008, four days prior to the petition date. While GM's damages cannot be calculated at this time, GM's claim for damages arose prior to the commencement of the petition. Accordingly, the Court is satisfied that GM has satisfied the element of timing by proving that both the debtors' right to the funds being held in the prepetition open accounts and GM's claim for damages arose prior to the commencement of the case.

The next element to be satisfied is that of mutuality. Under Michigan law, a setoff action "requires a mutuality of debt between the same real parties in interest, where the demands of the mutually indebted parties are set off against each other and only the balance recovered."[27] In this case, the parties in question with respect to the dealer franchise agreements are the debtors and GM. The debtors have a claim against GM for the funds being held in the open accounts and GM has a claim against the debtors for damages resulting from the debtors' breaches of the franchise

---

[25] *See Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft* Corp., 58 F.3d 1573 (11th Cir. 1995)(adopting a modified prepetition relationship test called the *Piper* test for determining whether a party has a preconfirmation claim against a debtor); Stone *v. Kmart Corp.,* 2007 WL 1034959 (M.D. Ala. 2007)(following the *Piper* test).

[26] *Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft* Corp., 58 F.3d 1573 (11th Cir. 1995).

[27] *In re New Haven Foundry, Inc.,* 285 B.R. 646, 648 (Bankr. E.D. Mich. 2002).

Case 08-83029-JAC11    Doc 1305    Filed 02/12/09    Entered 02/12/09 15:43:35    Desc
Main Document      Page 15 of 17

agreements. As such, the obligations are between the same real parties in interest serving in the same capacity and the element of mutuality is satisfied. GM is entitled to setoff its damages as will be determined in a separate action against the open accounts which are to be immediately placed in a separate escrow account pending final resolution of all issues between GM and GMAC related to both the prepetition funds and postpetition funds held in the open accounts prior to transfer to the escrow account.

### III. Contractual Rights

Alternatively, the Court finds that GM is entitled to deduct its damages under the broad netting provision contained in the dealer franchise agreements. Section 17.10 of the agreement provides that:

> All monies or accounts due Dealer are net of Dealer's indebtedness to General Motors and its subsidiaries. In addition, General Motors may deduct any amounts due or to become due from Dealer to General Motors or its subsidiaries, or any amounts held by General Motors, from any sums or accounts due or to become due from General Motors, or its subsidiaries.

As noted above, the Supreme Court has observed that it must "generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed" by Congress.[28] Michigan courts have held that unambiguous contract terms must be enforced as written.[29] The broad, omnibus netting provision in the dealer franchise agreements

---

[28] *Travelers Casualty & Surety Co. of Am. v. Pacific Gas and Electric Co.*, 127 S.Ct. 1119, 1206 (2007).

[29] *Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 ((Mich. 2003).

16

clearly and unambiguously allows GM to debt any amounts owed from the dealerships to GM against any amounts owed from GM to the dealerships. Accordingly, the Court finds that GM is entitled to deduct the amount of its damages, once determined, from the open accounts pursuant to the terms of § 17.10 of the dealer franchise agreements.

The Court having determined under the liability phase of this proceeding that GM is entitled to recoup, setoff or deduct the amount of its damages from the open accounts, hereby directs the parties to file a separate adversary proceeding for declaratory relief to determine the amount of GM's damages under the dealer franchise agreements and any other related issues.

Pursuant to Fed.R.Civ.P. Rule 54(b), the Court further finds that there is no just reason for delay with regard to the determinations made herein and upon its express direction, the Court enters final judgment on the determinations made herein.

Dated: February 12, 2009

/s/ Jack Caddell  
Jack Caddell  
U.S. Bankruptcy Judge

JAC/mhb  
xc:    Debtor(s)  
        Charles M. Tatelbaum, attorney for GMAC  
        Joseph R. Sgroi, attorney for GM  
        Derek Meek, attorney for debtor(s)  
        Richard Blythe, bankruptcy administrator